In re Terrie Ann MANUEL, Debtor.

The CENTRAL TRUST COMPANY, Plaintiff,

v.

Terrie Ann MANUEL, Defendant.

Adv. No. 1–82–0269.
Related Case No. 1–82–01840.

United States Bankruptcy Court, S.D. Ohio, W.D.

Nov. 17, 1982.

Stuart Brinn, Cincinnati, Ohio, for plaintiff.

Howard W. Bowen, Cincinnati, Ohio, for defendant/debtor.

## DECISION

BURTON PERLMAN, Bankruptcy Judge.

Plaintiff Central Trust Company, N.A. ("Central Trust") is a creditor of defendant who filed a bankruptcy petition in the above identified related Chapter 7 bankruptcy case. Plaintiff filed a complaint to determine dischargeability pursuant to 11 U.S.C. § 523(a)(2)(A), contending that the debt owed by defendant was obtained by false pretenses or false representation. The answer consisted essentially of a general denial. The case came on for trial, at the conclusion of which we reserved decision.

The evidence showed that defendant had three (3) charge card accounts. The one here involved is a Mastercard account through plaintiff No. 5202-10-12712-9 (hereafter " '129"). Defendants credit limit on this account was $1,000.00. Her monthly statements for each of the months December, 1981 through April 1981 reflected either no charge or one charge. Each of the statements for these months showed that the account was over limit.

But then statements for May and June 1982 show a total of 107 separate purchases made between April 1 and April 14. These records showed that there were forty charges on April 14, 1982; twenty charges on April 13, 1982; twenty charges on April 12, 1982; seventeen charges on April 10, 1982 as well as another fourteen charges distributed over the early days of April. It is to be noted that one charge on April 8th was for $50.64, but all of the others were below $50.00. (This has significance because a common limit with merchants is that they will not check with the credit card issuer as to whether the charge should be allowed, if a charge is less than $50.00.) The evidence is uncontested that defendant conducted a spending spree of several thousand dollars during the first half of April 1982. On May 3, 1982 she made a payment of $90.00 on her account and on June 2, 1982, she made a payment of $56.00 on her account.

Plaintiff's evidence established that defendant was being contacted at the beginning of April 1982 because of her unsatisfactory payment record. On March 15, 1982, a letter was sent to defendant notifying her to stop using her credit card, though defendant testified that she did not remember receiving such a letter. On April 12, 1982 a Mail-o-gram was sent to defendant by plaintiff requiring that she surrender her card to plaintiff. She did so and the card was received by plaintiff on April 16, 1982. Plaintiff filed suit against defendant in Hamilton County Municipal Court in June 1982. On June 29, 1982, defendant filed her bankruptcy petition.

Defendant testified that she had gotten behind in making payments to plaintiff on her account because of a debt owed to a relative, and that this debt was paid off in May 1982. She testified that her husband's income was necessary to her expectation to pay the account in question. He was working until October 1982.

We stated in an earlier case, *Central Trust Company v. Temple,* unreported, (B.J., S.D.Oh., Bankruptcy Case No. B-1-76-1989, July 13, 1977), that:

"... a debt may be held nondischargeable which was incurred by use of credit cards where there was no realistic intention of paying the debt."

See also *In re Vegh,* 14 B.R. 345, 347 (B.J., S.D., Fla., 1981). The evidence here is clear. By letter sent March 15, 1982, and by telephone contact at the beginning of April 1982, plaintiff had let debtor know that the failure to pay her debt down below its limit was not acceptable, to the point that plaintiff was preparing to withdraw charging privileges on this account from defendant. We are satisfied from the evidence that this was the stimulus which led defendant to compile the amazing record of charges on the account between April 10 and April 14, 1982. There is authority that this record itself is evidence of an absence of an intention to pay. *Matter of Schnore,* 13 B.R. 249, 256 (B.J.W.D., Wis., 1981). Upon request, which she had been expecting, defendant destroyed and returned the

pieces of her card to plaintiff. Our conclusion is that there was at the time of the charges an absence of a realistic basis for believing that she could pay the debt, in view of the prior history of defendant in connection with this account.

This prior history showed that for some months prior to this binge, defendant had been over her limit on this card, and had not brought it back within the limit despite repeated requests. Moreover, she testified that she could not, on her income, make the payments represented by these charges. She testified that she could make the payments based upon her husband's income, but the fact is that even with the availability of her husband's income, the excess over limit of the prior to April 1982 had not been cured. While defendant said that husband's income had not been available for this purpose prior to May because of an obligation to pay a family debt, we find the defendant's evidence in this respect inadequate to support the thesis. Moreover, based upon our observation of defendant at the trial, we have concluded that her testimony is not credible.

We find that plaintiff has by clear and convincing evidence proved the requisites required of it to establish that the debt owed by defendant to plaintiff is nondischargeable. Accordingly, the issues will be found in favor of plaintiff and judgment will be rendered in its favor in the amount sought, $3,247.04.

The foregoing constitutes our findings of fact and conclusions of law.